United States District Court
Southern District of Texas
**ENTERED**
November 12, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DIEDRE HOLLOWAY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:24-CV-2014 |
| | § | |
| FORT BEND INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

Before the court is Defendant Fort Bend Independent School District's Motion to Dismiss Plaintiff's Third Amended Complaint. (Dkt. No. 33). Upon consideration of Plaintiff's Third Amended Complaint (Dkt. No. 28), Defendant's Motion (Dkt. No. 33), Plaintiff's Response (Dkt. No. 42), and Defendant's Reply (Dkt. No. 43), and in light of the relevant law, the court is of the opinion that Defendant's Motion should be **GRANTED IN PART AND DENIED IN PART**.

### I.    Factual and Procedural Background[1]

Plaintiff Deirdre Holloway ("Holloway") is an African American woman who was employed by Defendant Fort Bend Independent School District ("FBISD") for fifteen years before her retirement in 2022. (Dkt. No. 28 at ¶¶ 4, 7). In her fifteen years with FBISD, Holloway served in several roles, including elementary school principal, middle school principal, and director of state and federal programs. (*Id.* at ¶ 7). When the conduct complained of in this lawsuit began, Holloway was serving as FBISD's director of Title I programs. (*Id.* at ¶¶ 35, 40). While Holloway

---

[1] As this Order concerns a motion to dismiss under Federal Rule of Civil Procedure 12(b), the facts presented herein are as alleged by Plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted) (internal quotation marks omitted) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.").

served in this role, Dr. Deena Hill ("Hill") was FBISD's director of student support services, and she acted as Holloway's supervisor. (*Id.* at ¶ 9). Hill had the authority to determine Holloway's work schedule and assignments, approve Holloway's time off, carry out disciplinary actions against Holloway, and complete Holloway's annual performance reports. (*Id.* at ¶ 10). Thus, Holloway asserts that at all points relevant to this lawsuit, Hill acted as an agent and employee of FBISD. (*Id.* at ¶ 11).

Holloway alleges that Hill demonstrated racial animus and discrimination toward Holloway on several occasions. At a diversity training on September 24, 2019, Hill joked that someone planning to attend a family funeral for an African American staff member needed "to be prepared to stay a long time with all that singing and dancing and stuff." (*Id.* at ¶ 14). In the summer of 2020, a district member's stepson was killed. (*Id.* at ¶ 16). He was African American, and Hill asked Holloway if she knew what happened and if he was a drug dealer. (*Id.*).

On February 17, 2021, Holloway's home flooded due to a major winter storm. (*Id.* at ¶ 18). Holloway requested the ability to work remotely while her house was being repaired and she was living in a hotel. (*Id.*). At that time, Holloway was also taking care of her elderly mother. (*Id.*). Hill ultimately approved Holloway's remote-work request, but she also suggested that Holloway should take time off under the Family and Medical Leave Act instead. (*Id.*). Holloway began working remotely and taking days off to care for her mother. (*Id.* at ¶¶ 19–23). During that time, Hill began calling Holloway on her days off to ask if she was coming to work, even though Hill knew Holloway was caring for her mother. (*Id.* at ¶ 20). Hill would ask Holloway how long she would be in the hotel and why there were no other family members to assist her. (*Id.* at ¶ 22). Hill also criticized Holloway for missing an early morning meeting and told her she needed to appear in the office from time to time. (*Id.*). Holloway alleges that Hill consistently treated her less favorably than her similarly situated co-worker, the director of special education programs, who

was a white male. (*Id.* at ¶ 23). At the same time that Hill denied Holloway's request to work from home on certain days, this male co-worker was allowed to work from home for several months without issue. (*Id.*).

Holloway alleges other instances of animus during that time, which include Hill repeatedly instructing Holloway to redo a presentation that had already been prepared correctly and threatening to report Holloway for failure to speak with principals about equity plans, even though Hill had specifically instructed Holloway not to meet with school principals about that issue. (*Id.* at ¶¶ 24–25).

On May 5, 2021, Holloway filed a grievance against Hill, and a hearing officer conducted an investigation. (*Id.* at ¶ 26). The officer said she would instruct Hill to stop making inquiries about Holloway's home, and she directed FBISD to engage Hill in racial and cultural bias training. (*Id.* at ¶¶ 26, 28). The officer also recommended reassignment for Holloway. (*Id.* at ¶ 29).

Despite the grievance and the hearing officer's recommendations, FBISD still permitted Hill to conduct Holloway's performance evaluation in June of 2021. (*Id.* at ¶ 30). During the performance evaluation, Hill said that Holloway was getting a lower-than-average rating in one category because of the grievance Holloway filed. (*Id.* at ¶ 30). The FBISD human resources representative in the meeting did not intervene after Hill's statement or report the statement up the chain of command. (*Id.*). Holloway complained to FBISD's human resources director, who noted that Holloway's score was eventually raised, so there was "no harm, no foul." (*Id.* at ¶ 31).

A few months later, FBISD reassigned Holloway, naming her the director of student affairs. (*Id.* at ¶ 32). This new position had no actual supervisory responsibilities; even though there were two assistant directors, they did not report to Holloway. (*Id.* at ¶ 33). When Holloway arrived at her new workspace, no office had been prepared for her, and she was made to work in

the hallway for two days. (*Id.* at ¶ 34). FBISD filled Holloway's previous position, director of Title I programs, with a white female. (*Id.* at ¶ 35). Holloway retired from FBISD in 2022. (*Id.* at ¶ 37).

Holloway filed a charge of discrimination against FBISD with the Equal Employment Opportunity Commission ("EEOC") on January 6, 2022. (Dkt. No. 33-1). The EEOC issued Holloway a right to sue letter on March 1, 2024, instructing Holloway that she had ninety days to file her lawsuit. (Dkt. No. 1-1). Holloway filed her original complaint on May 28, 2024, eighty-eight days after receiving notice of her right to sue. (Dkt. No. 1). In response to motions to dismiss filed by FBISD, Holloway filed a first amended complaint on July 22, 2024, a second amended complaint on August 22, 2024, and a third amended complaint on May 12, 2025. (Dkt. Nos. 6, 18, 28).

In her third amended complaint, Holloway alleges racial discrimination, retaliation, and hostile work environment claims under Title VII and a Section 1983 claim for violation of the Equal Protection Clause of the Fourteenth Amendment. (Dkt. No. 28 at ¶¶ 38–68). FBISD moved to dismiss all claims under either Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6). (Dkt. No. 33 at 9, 12). The court will address each claim accordingly.

## II.    Standards of Review

### A.  Rule 12(b)(1)

A court properly dismisses a case for lack of subject-matter jurisdiction under Rule 12(b)(1) "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)); *see* FED. R. CIV. P. 12(b)(1). A party challenging jurisdiction under Rule 12(b)(1) may do so through a "facial attack" on the complaint, or through a "factual attack" relying on evidence outside the pleadings. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.), *cert. denied*, 449 U.S. 953 (1980). The former "requires the court merely to look and see if plaintiff has sufficiently alleged

a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* If the movant pursues the latter, "no presumptive truthfulness attaches to the plaintiff's allegations." *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004). Instead, the court looks to whether the plaintiff has proven the existence of subject-matter jurisdiction by a preponderance of the evidence, and can decide disputed issues of material fact in making this determination. *Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (quoting *Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989), *aff'd sub nom.*, *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990)); *Montez*, 392 F.3d at 149. In sum, the court may determine lack of subject-matter jurisdiction on the basis of: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

### B. Rule 12(b)(6)

A party may move to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) is read in conjunction with the pleading standard set forth in Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *see Ashcroft v. Iqbal*, 556 U.S. 662, 677-68 (2009). This standard does not require detailed factual allegations. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, a party's "obligation to provide the 'grounds' of his 'entitle[ment]' to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). To survive a Rule 12(b)(6) motion, the complaint and any other matters properly considered[2] must contain "sufficient factual

---

[2] "Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the pleaded factual content allows the court, drawing upon its "judicial experience and common sense," to reasonably infer that the defendant is liable for the misconduct alleged. *Id.* at 678 (citing *Twombly*, 550 U.S. at 556), 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

### III.    Defendant's Motion to Dismiss

A. Rule 12(b)(1)

a. *Statute of Limitations*

Under 42 U.S.C. § 2000e–5(e)(1), "[a] plaintiff may bring a claim for discrimination under Title VII only if she has filed a claim with the EEOC within 180 days of the alleged unlawful act, or within 300 days if the plaintiff first filed a complaint with a state or local agency." *Ikossi-Anastasiou v. Bd. of Supervisors of Louisiana State Univ.*, 579 F.3d 546, 549 (5th Cir. 2009). Holloway first filed her charge of discrimination with the Texas Workforce Commission, and the parties therefore do not dispute that the applicable time limit here is 300 days. (Dkts. No. 33 at ¶ 15 and No. 42 at ¶ 15).

Under *Nat'l R.R. Passenger Corp. v. Morgan*, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." 536 U.S. 101, 113 (2002). In *Morgan*, the Supreme Court determined that discreet acts might include

---

notice.'" *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)); *see also Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (court's review on 12(b)(6) motion "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint").

"termination, failure to promote, denial of transfer, or refusal to hire." *Id.* at 114. According to the Court, "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.* Therefore, for discreet acts of discrimination or retaliation in Texas, a plaintiff must file a charge with the EEOC within 300 days after the discriminatory act occurred. *Id.* at 113.

However, the existence of past acts does not bar employees from timely filing charges about related, independently discriminatory acts. *Id.* "Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim." *Id.* Relatedly, when it comes to hostile work environment claims, "[i]t does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period." *Id.* at 117. So long as "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.*

Here, Holloway's complaint asserts three claims under Title VII—(1) hostile work environment, (2) retaliation, and (3) racial discrimination. (Dkt. No. 28 at ¶¶ 38–52, 63–68). In its motion to dismiss, FBISD argues that any incidents alleged in Holloway's complaint occurring before March 12, 2021, should be barred by the 300-day statute of limitations period set by the Civil Rights Act and Texas Labor Code. (Dkt. No. 33 at ¶¶ 15–16). This constitutes a facial attack under 12(b)(1), so the court considers just the allegations in Holloway's complaint. *See Menchaca,* 613 F.2d at 511. The court will analyze each of Holloway's Title VII claims in turn.

First, in her response to FBISD's motion to dismiss, Holloway cites *Morgan,* arguing that incidents occurring before March 12, 2021, are properly raised as part of a single hostile work environment claim, and "not as timely discreet acts." (Dkt. No. 42 at ¶ 17). In reply, FBISD concedes that *Morgan* allows "untimely" asserted facts to support a claim for hostile work

environment under Title VII. (Dkt. No. 43 at ¶ 1). Holloway alleges that part of her hostile work environment claim involves being reassigned to a non-supervisory role and forced to work from the hallway. (Dkt. No 28 at ¶ 49). Her reassignment happened in fall 2021—within the 300-day statute of limitations window—meaning that Holloway's hostile work environment claim was timely filed with the EEOC. *See Morgan*, 536 U.S. at 117. Thus, Rule 12(b)(1) and the statute of limitations are not a basis for dismissal of that claim, and any incidents occurring before the 300-day window may be properly considered for determining FBISD's liability under the hostile work environment claim.

Second, FBISD argues that under *Morgan*, any incidents alleged by Holloway that occurred outside of the 300-day window cannot support her discrimination and retaliation claims. (Dkt. No. 43 at ¶ 2). FBISD is correct that any discreet claim of retaliation brought by Holloway that occurred before March, 12, 2021, would be barred as untimely. However, Holloway's retaliation claim is based on events that occurred after she filed a grievance against Hill in May of 2021. (Dkt. No. 28 at ¶¶ 63–66). Therefore, Holloway timely filed her retaliation claim with the EEOC, and Rule 12(b)(1) and the 300-day statute of limitations period are not a basis for dismissal of that claim.

Lastly, Holloway alleges two discreet adverse actions under her racial discrimination claim—(1) punishment for Holloway's work from home request and (2) demotion to a non-supervisory position. (*Id.* at ¶¶ 41, 44). Hill's allegedly discriminatory response to Holloway's work-from-home request in February of 2021 was not timely filed by Holloway because those events happened before March 12, 2021. Therefore, under *Morgan*, the claim arising from Holloway's work-from-home request is no longer actionable, and it should be dismissed under Rule 12(b)(1). *See* 536 U.S. at 115. Holloway's reassignment, however, happened "in late August or early September of 2021," meaning that it did fall within the 300-day statute of limitations

window. (Dkt. No. 28 at ¶ 32). Therefore, Rule 12(b)(1) and the 300-day statute of limitations period are not a basis for dismissal of Holloway's claim for discrimination through her reassignment.

Accordingly, the court finds that Holloway's claims under Title VII for hostile work environment, retaliation, and discrimination by reassignment to a non-supervisory position were all timely filed with the EEOC. However, Holloway's claim for discrimination after her request to work remotely is time-barred. FBISD's motion to dismiss that claim is **GRANTED**, and it is hereby **DISMISSED WITH PREJUDICE** under Rule 12(b)(1).

### b.  Exhaustion of Administrative Remedies[3]

Before seeking relief in federal court, "Title VII plaintiffs are required to exhaust their administrative remedies by filing a charge of discrimination with the Equal Employment Opportunity Commission." *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 303 (5th Cir. 2018), aff'd, 587 U.S. 541, 139 S.Ct. 1843, 204 L.Ed.2d 116 (2019). When determining whether a Title VII claim has been exhausted, courts "construe the EEOC charge in its broadest reasonable sense," asking if "the claim can reasonably be expected to grow out of the charge of discrimination." *Davenport v. Edward D. Jones & Co., L.P.*, 891 F.3d 162, 167 (5th Cir. 2018) (internal quotation marks and citation omitted). "Although verbal precision and finesse in the charge are not required, a Title VII lawsuit can include only those allegations that are like or related to those allegations contained in

---

[3] The court considers the administrative exhaustion issue under the header of Rule 12(b)(1) because FBISD's motion to dismiss raises it under 12(b)(1). However, it should be noted that Title VII's charge-filing requirement is not jurisdictional. *See Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541, 551 (2019). Instead, it is considered a mandatory "processing rule" and "not a jurisdictional prescription delineating the adjudicatory authority of courts." *Id.* at 551.

the EEOC charge and growing out of such allegations during the pendency of the case before the Commission." *Id.* (internal quotation marks and citation omitted).

Here, FBISD argues that Holloway failed to exhaust her administrative remedies for her allegations that (1) she was denied the ability to work from home, (2) she was made to work from a hallway after being reassigned to her new position, and (3) that Hill made offensive statements related to the death of their colleague's stepson. (Dkt. No. 43 at ¶ 4). FBISD claims that these factual allegations cannot be considered by the court because Holloway failed to include them in her charge of discrimination with the EEOC. (*Id.*).

The court will resolve this issue using Holloway's complaint, supplemented by the EEOC charge, which FBISD attached to its motion to dismiss. *See Ramming*, 281 F.3d at 161; *Stewart v. Int'l Ass'n of Machinists & Aerospace Workers*, 16 F. Supp. 3d 783, 797 n.45 (S.D. Tex. 2014) ("Even though the EEOC charge is a matter outside the pleading, judicial notice of it may be taken as a matter of public record . . . ."). Because Holloway's claim for discrimination based on her work from home request is time-barred, the court need not resolve whether Holloway also exhausted her administrative remedies for that claim. Remaining in dispute are Holloway's allegations that (1) she was made to work from a hallway after being reassigned to her new position and (2) Hill made offensive statements to her about the death of their colleague's stepson. (Dkt. No. 43 at ¶ 4).

On her EEOC charge, Holloway checked the boxes for discrimination based on race, color, and retaliation. (Dkt. No. 33-1 at 1). In the narrative portion of the charge, Holloway describes the events following the 2021 winter storm and her work from home request. (*Id.*). She also describes Hill's statement about the African American funeral, FBISD's investigation of and response to her grievance, Hill's statement that Holloway's performance score was lowered because she submitted the grievance, and Holloway's ultimate reassignment to a non-supervisory role. (*Id.* at 2).

Construing the EEOC charge "in its broadest reasonable sense," the court concludes that the scope of Holloway's charge could be read to include claims for discrimination based on race, hostile work environment, and retaliation. Although Holloway did not mention being forced to work from a hallway or Hill's statements about their colleague's stepson in her EEOC charge, both allegations relate to and support Holloway's hostile work environment claim. The allegation about being forced to work from the hallway also relates to Holloway's discrimination and retaliation claims. Therefore, the court finds that these two allegations do not give rise to new claims under Title VII, and they are sufficiently "like or related to" the allegations in Holloway's EEOC charge to pass the administrative exhaustion requirement.

Accordingly, FBISD's motion to dismiss Holloway's claims for failure to exhaust administrative remedies is **DENIED**.

B.  Rule 12(b)(6)

a.  *Title VII Discrimination*

"Under Title VII, it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Hamilton v. Dall. Cnty.*, 79 F.4th 494, 502 (5th Cir. 2023). At the motion to dismiss stage, a plaintiff "need not submit evidence to establish the prima facie case for discrimination, [but] she must plead sufficient facts on all of the ultimate elements of the claim to make her case plausible." *Davis v. Tex. Health & Hum. Servs. Comm'n*, 761 F. App'x 451, 454 (5th Cir. 2019).

To state a claim for discrimination under Title VII, a plaintiff must plead that she "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone

outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group." *Offord v. City of Fulshear*, 861 F. App'x 536, 541 (5th Cir. 2021) (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007)).

Here, FBISD argues that Holloway's allegations fail to state a cognizable claim for discrimination under Title VII. (Dkt. No. 33 at ¶ 25). FBISD argues, "Plaintiff seeks to rely upon facts that this Court cannot entertain as such facts have not been timely raised nor properly exhausted." (Dkt. No. 43 at ¶ 6). As discussed above, the discrimination claim arising from Holloway's remote work request was not timely filed with the EEOC. That claim is dismissed under Rule 12(b)(1), so the court will not analyze it here. However, Holloway's claim for discrimination based on her reassignment was timely, and the court will now consider if Holloway has pled sufficient facts to make a plausible claim for discrimination based on that event.

FBISD maintains that Holloway's complaint fails to allege facts sufficient to show the third and fourth elements of a Title VII discrimination claim. (Dkt. No. 33 at ¶ 38). In her complaint, Holloway alleges that FBISD "took a further adverse employment action against Plaintiff by demoting her to a nonsupervisory position and assigning her to work in a hallway." (Dkt. No. 28 at ¶ 44). FBISD argues that Holloway's reassignment "was not an adverse employment action as the reassignment was a remedy granted by the grievance hearing officer pursuant to Plaintiff's grievance." (Dkt. No. 33 at ¶ 31).

A plaintiff suffers an adverse employment action when there is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 268 (5th Cir.1998). The Fifth Circuit has determined that a transfer can qualify as an adverse employment action when it is the "equivalent of a demotion." *Alvarado v. Texas Rangers*, 492 F.3d 605, 612 (5th Cir. 2007). And "[t]o be equivalent to a demotion, a

transfer need not result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse—such as being less prestigious or less interesting or providing less room for advancement." *Id.* at 613. Holloway's allegation that FBISD reassigned her to a non-supervisory position indicates that her new job had significantly different responsibilities from and was a demotion from her former role. Therefore, taking Holloway's allegations as true, the court concludes that she has stated facts sufficient to show that she suffered an adverse employment action.

FBISD also argues that because Holloway's reassignment was not an adverse employment action, the individual who replaced Holloway in her "previous position is not relevant." (Dkt. No. 33 at ¶ 36). FBISD makes no further argument about Holloway's failure to sufficiently allege the fourth element. Because Holloway alleges that she was replaced with a white female, the court finds that Holloway has also sufficiently pleaded the fourth element of her Title VII discrimination claim. Therefore, FBISD's motion to dismiss Holloway's claim for discrimination based on her reassignment in the fall of 2021 is **DENIED**.

        *b.  Title VII Retaliation*

To successfully allege a claim of retaliation under Title VII, a plaintiff must plead facts showing that (1) she engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse employment action. *Cuellar v. Southwest General Emergency Physicians, P.L.L.C.*, 656 F. App'x 707, 709 (5th Cir. 2016) (citing *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 655 (5th Cir. 2004)). "Protected activity under Title VII is either opposing any practice made unlawful by [Title VII], or making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under this subchapter." *Id.* (quoting 42 U.S.C. § 2000e–3(a)) (cleaned up). To state a retaliation claim based on opposition to discriminatory practices, "a plaintiff must show she

reasonably believed the employment practice she opposed was unlawful under Title VII." *Id.* And "a viable Title VII *retaliation* claim does not necessarily depend on a viable *harassment* or *discrimination* claim." *Id.* (emphasis in original).

Here, FBISD argues that Holloway's complaint fails to state a cognizable claim for retaliation against the district under Title VII for the following reasons: (1) Holloway filing a grievance does not mean she engaged in protected activity, (2) Holloway did not suffer an adverse employment action, and (3) Holloway did not plead any facts showing a causal connection between the filing of her grievance and the alleged adverse employment action. (Dkt. No. 33 at ¶¶ 39–43).

First, FBISD argues that Holloway has not alleged facts showing that filing a grievance against Hill qualified as protected activity under Title VII. For an internal complaint or grievance to qualify as protected activity, "an employee cannot simply complain that she received unfair or undesirable treatment . . . . A vague complaint that does not reference a discriminatory employment practice does not constitute a protected activity." *Carter v. Target Corp.*, 541 F. App'x 413, 418 (5th Cir. 2013). Holloway's complaint does not go into detail about the content of her grievance. But Holloway does show that the grievance was filed, at least in part, in response to Hill's statement about Black church funerals. (Dkt. No. 28 at ¶ 27–28). And she alleges that the grievance hearing officer directed FBISD to engage Hill in racial and cultural bias training. (*Id.*). Noting that a viable retaliation claim is not necessarily contingent on a viable discrimination or harassment claim, the court concludes that Holloway has shown reasonable belief that the employment practices she opposed in her grievance violated Title VII. *See Cuellar*, 656 F. App'x at 709 ("To state a retaliation claim based on opposition clause protected activity, a plaintiff must show she reasonably believed the employment practice she opposed was unlawful under Title VII.") (quoting *EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 239 (5th Cir. 2016)) (internal quotation marks omitted).

Second, as explained above, Holloway has pled sufficient facts to plausibly show that her reassignment qualified as an adverse employment action. Holloway also alleges that she was subject to a retaliatory adverse employment action when Hill gave her a lowered performance evaluation score because of the grievance. (Dkt. No. 28 at ¶ 65). FBISD argues that a lowered score on a performance evaluation does not qualify as an adverse employment action, and FBISD cites caselaw discussing the issue in the context of substantive discrimination claims. (Dkt. No. 43 at ¶ 9 n.1).

However, Title VII's anti-retaliation provision is wider in scope than Title VII's substantive provision. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). To show an adverse employment action in the retaliation context, a plaintiff only needs to "show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* Holloway alleges that during her performance evaluation, "Hill stated outright that she was giving Plaintiff a lower-than-average rating in one of the rated areas due to the bringing of the grievance." (Dkt. No. 28 at ¶ 30). The court finds that this statement qualifies as an action which would have dissuaded a reasonable worker from making or supporting a charge of discrimination. Therefore, Holloway has alleged facts sufficient to show two adverse employment actions in the context of her retaliation claim.

Third, FBISD argues that Holloway "has also failed to plead any fact that satisfies the final element showing a causal connection between any such protected activity and alleged adverse action." (Dkt. No. 33 at ¶ 43). To plausibly allege the causation element of a retaliation claim, a plaintiff must "plead facts permitting a reasonable inference" that the adverse employment action occurred because of her protected activity. *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021). When a protected activity and an adverse employment action happen close together,

there may be a reasonable inference of causation. *See id.* (finding that an employee's suspension one day after submitting an internal complaint and termination one month later permitted a reasonable inference of causation); *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 219 (5th Cir. 2016) (holding that "the close timing between . . . protected activity and the denial of a raise— about two months—is sufficient to show causal connection for purposes of a *prima facie* case). However, the proximity between the protected activity and the adverse action must be "very close" to establish causation, and the Fifth Circuit has determined "that two and one-half months between the protected activity and the adverse employment decision, standing alone, is not within the 'very close' proximity that is necessary to establish causation." *Besser v. Texas Gen. Land Off.*, 834 F. App'x 876, 885 (5th Cir. 2020).

Here, Holloway alleges that there is a "causal connection between the statutorily-protected expression and the adverse employment actions by reason of their temporal closeness." (Dkt. No. 28 at ¶ 66). Because Holloway states that Hill told her the performance evaluation score was due to her grievance, Holloway has clearly shown a causal connection between the performance evaluation and her protected activity. (Dkt. No. 28 at ¶ 30). However, Holloway has failed to allege sufficient temporal closeness between the grievance and her reassignment. Holloway's complaint alleges that her demotion did not occur until late August of 2021, approximately three months after she filed the grievance against Hill. (Dkt. No. 28 at ¶ 66). Therefore, under *Besser*, Holloway has not alleged sufficient temporal closeness to show causation between the filing of her grievance in May and her reassignment to a non-supervisory role in August. *See* 834 F. App'x at 885.

Accordingly, FBISD's motion to dismiss Holloway's retaliation claim is **DENIED** as to Holloway's lowered performance evaluation score and **GRANTED** as to Holloway's reassignment to a non-supervisory role.

### c.  *Title VII Hostile Work Environment*

"To establish a hostile work environment claim under Title VII," a plaintiff generally must show that she:

> (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on [her] membership in the protected group; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action."

*Eng. v. Perdue*, 777 F. App'x 94, 98 (5th Cir. 2019). However, "[i]f the claim is that the supervisor harassed the employee, the plaintiff need not satisfy the fifth element." *Caldwell v. Lozano*, 689 F. App'x 315, 322 (5th Cir. 2017). To affect a term, condition, or privilege of employment, harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* "In determining whether harassment is sufficiently pervasive or severe, [courts] consider 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 471 (5th Cir. 2021) (quoting *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 445 (5th Cir. 2017)).

Here, FBISD argues that Holloway has not alleged facts showing (1) harassment that affected a term, condition, or privilege of her employment or (2) that FBISD knew or should have known of the harassment and failed to take remedial action. (Dkt. No. 33 at ¶ 47). Holloway does not need to show that FBISD knew or should have known of the harassment and failed to act because she has alleged sufficient facts to show that Hill was her supervisor. (Dkt. No. 28 at ¶¶ 9–10). However, Holloway does need to plead enough facts to show that she faced harassment that

was severe or pervasive enough to affect a term, condition, or privilege of her employment. *See Caldwell*, 689 F. App'x at 322.

At the motion to dismiss stage, the Fifth Circuit has found conduct sufficiently severe to support a hostile work environment claim when the complaint alleges harassment through speech that is especially egregious or violent. *See Woods v. Cantrell*, 29 F.4th 284, 285 (5th Cir. 2022) (finding a single incident sufficiently severe to state an actionable hostile work environment claim when a worker's supervisor directly called him a "Lazy Monkey A__ N___" in front of his fellow employees); *see also Hudson v. Cleco Corp.*, 539 F. App'x 615, 620 (5th Cir. 2013) (discussing a hanging noose displayed in the workplace and noting that "such an incident might constitute an 'extremely serious' isolated event causing a discriminatory change in the terms and conditions of one's employment.") However, if individual instances of harassment are not severe, conduct may still be pervasive enough to support a hostile work environment claim when many incidents occur in a short time period. *See Blanchard v. Tulane Univ.*, 636 F. Supp. 3d 642, 657 (E.D. La. 2022) (finding harassment pervasive when a complaint alleged eleven separate instances of discriminatory conduct over the course of two years); *Lauderdale v. Tex. Dept. of Criminal Justice, Institutional Div.*, 512 F.3d 157, 164 (5th Cir. 2007) (finding pervasiveness when a plaintiff received unwanted phone calls "ten to fifteen times a night for almost four months").

On the other hand, "Title VII does not impose a general civility code on employers," and the Fifth Circuit has determined that harassment is not severe or pervasive when a plaintiff alleges infrequent conduct that falls within "the ordinary tribulations of the workplace." *West v. City of Houston*, 960 F.3d 736, 742 (5th Cir. 2020) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)) (finding conduct was not severe or pervasive when plaintiff complained that "her coworkers passed gas at the dinner table; infrequently slept in their underwear at the station; made the occasional racially insensitive joke; and brought adult magazines to the station."). *See also*

*Stone v. Louisiana Dep't of Revenue*, 590 F. App'x 332, 340 (5th Cir. 2014) (finding that harassment was not severe or pervasive even when a supervisor accused the employee of losing documents, reduced her telecommuting privileges, assigned her more "desk audits" than Caucasian employees, improperly delayed approval of her hours, and searched her desk without permission); *Mosley v. Marion Cnty.*, 111 F. App'x 726, 728 (5th Cir. 2004) (finding no hostile work environment despite three incidents involving a racial slur).

Here, Holloway has not alleged facts sufficient to show that Hill's conduct was severe or pervasive enough to affect a term, condition, or privilege of her employment. Holloway states that she "was subjected to harassment and hostility on the basis of race" based on the following events: (1) Hill's joke about black church funerals in 2019; (2) Hill's question about whether their co-worker's black stepson was a drug dealer in 2020; (3) Hill's scrutiny of Holloway when she was working from home in February 2021, even though her white co-worker was allowed to work from home with no issue; and (4) FBISD's reassignment of Holloway to a non-supervisory position where she was forced to work from a hallway for two days. (Dkt. No. 28 at ¶ 49). Even taking all of Holloway's allegations as true, these four events do not rise to the level of severe or pervasive conduct that creates an actionable claim for hostile work environment under Title VII. *See Stone*, 590 F. App'x at 340.

Accordingly, FBISD's motion to dismiss Holloway's hostile work environment claim for failure to state a claim under Rule 12(b)(6) is **GRANTED**.

### d. Section 1983

Finally, Holloway alleges that FBISD "violated the Equal Protection Clause of the 14th Amendment to the United States Constitution, in that [Hill's] conduct was motivated by

[Holloway's] membership in a protected class as an African American/Black female, and Defendant's knowledge of that fact." (Dkt. No. 28 at ¶ 59).

Section 1983 "provides that every person who, under color of any statute, ordinance, regulation, custom, or usage of any State subjects, or causes to be subjected, any person to the deprivation of any federally protected rights, privileges, or immunities shall be civilly liable to the injured party." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 658 (2018) (quoting 42 U.S.C. § 1983) (internal quotations omitted). The Supreme Court has held that local governmental units, such as school districts, are considered persons to which § 1983 applies. *Id.* at 689. The scope of a local government's liability under § 1983 is limited to instances where the deprivation of rights results from a custom, policy, or practice. *Id.*

> Under *Monell v. Department of Social Services of City of New York* and its progeny, a claim of "municipal liability under Section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. The "official policy" requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible . . . So to prevail against a public school district, a plaintiff must show that the district's final policymaker acted with deliberate indifference in maintaining an unconstitutional policy that caused the plaintiff's injury.

*Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 365–66 (5th Cir. 2020).

Holloway does not allege any facts showing that FBISD's final policy maker acted with deliberate indifference in maintaining an unconstitutional policy that caused Holloway's injury. She alleges (1) that she was qualified for her position as director of Title I programs, (2) that Hill

scrutinized and punished Holloway for requesting to work from home, (3) that her similarly-situated white male co-worker was allowed to work from home with no issue, and (4) that she was demoted to a non-supervisory position and forced to work from a hallway. (*Id.* at ¶¶ 55–58). Because Holloway does not allege any facts showing an unconstitutional policy, FBISD's motion to dismiss Holloway's Fourteenth Amendment claim under Rule 12(b)(6) is **GRANTED**.

## IV.    Conclusion

For the foregoing reasons, the court hereby ORDERS that Defendant's Motion to Dismiss (Dkt. No. 33) is hereby **GRANTED IN PART AND DENIED IN PART**.

The following claim is **DISMISSED WITH PREJUDICE**:

(1) Plaintiff's claim for discrimination based on her work from home request in February 2021.

The following claims are **DISMISSED WITHOUT PREJUDICE**:

(1) Plaintiff's claim for retaliation based on her reassignment in the fall of 2021;

(2) Plaintiff's hostile work environment claim; and

(3) Plaintiff's Section 1983 claim for violation of the Equal Protection Clause of the Fourteenth Amendment.

The following claims remain:

(1) Plaintiff's claim for discrimination based on her reassignment in the fall of 2021; and

(2) Plaintiff's claim for retaliation based on her performance evaluation in June of 2021.

**SO ORDERED** November 12, 2025, at McAllen, Texas.

Randy Crane
Chief United States District Judge